UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KAREN ANDREAS-MOSES;
ELIZABETH WAGNER; JACQUELINE
WRIGHT; MIKAELA DELPHA;
STEPHANIE WEST; JOSEPH J.
WOJCIK; TINA PALMER; and AMY
COOK,

      Plaintiffs,

v.                                  Case No. 6:17-cv-2019-Orl-37KRS

HARTFORD FIRE INSURANCE
COMPANY,

      Defendant.
_____

## <u>ORDER</u>

Before the Court is Plaintiffs' Motion for Class Certification and Appointment of

Plaintiffs' Counsel as Class Counsel (Doc. 93 ("**Motion**")), and responsive filings (Docs.

98, 101, 102). The Court held a hearing on the Motion (Docs. 117, 122); this Order follows.

## I.    BACKGROUND

This putative class action originated in the Northern District of New York

("**NDNY**") on November 18, 2016. (Doc. 1.) Plaintiffs are eight individuals currently or

formerly employed by Defendant Hartford Fire Insurance Company ("**Hartford**") as

"**Analysts**" processing disability claims. (Doc. 25, ¶ 1.) They claim that Hartford

misclassified them as exempt from overtime and failed to provide them accurate wage

statements in violation of New York Labor Law ("**NYLL**"). (*Id.* ¶¶ 2–3.) Accordingly,

Plaintiffs seek to certify a class of similarly situated employees to recover, *inter alia*, unpaid overtime and statutory damages. (*Id.* ¶¶ 86, 92, 93; Doc. 93.) With their Motion, Plaintiffs submitted an internal memorandum from Hartford classifying certain positions as exempt from overtime (Doc. 93-1 ("**Golden Memo**")) and declarations from each Plaintiff about their job duties (Docs. 93-2–93-11 ("**Declarations**").)

In opposition, Hartford argues that class certification is improper because individualized inquiries predominate both the merits issue of the Analysts' proper classification and the issue of damages. (Doc. 98.) Hartford submitted their own declarations and portions of deposition testimony from several plaintiffs in support. (Docs. 98-1–98-14.)

Plaintiffs then submitted a reply, as permitted by NDNY. (Doc. 101.) Alongside, Plaintiffs appended additional evidence, including: other portions of Plaintiffs' deposition testimony to rebut Hartford's extractions, internal Hartford training documents, and documents and filings from two previous, related cases. (Docs. 101-1–101-27.) NDNY U.S. Magistrate Judge David E. Peebles heard argument on the Motion and two other motions to dismiss (Docs. 32, 33) on August 16, 2017. Following that hearing, he allowed Hartford to file a letter brief (Doc. 102) and directed Plaintiffs to file full deposition transcripts (Doc. 50). Magistrate Judge Peebles then issued a Report and Recommendation on October 30, 2017, recommending that the action be transferred to this district under the first-filed doctrine raised by Hartford in one of its motions to dismiss. (Doc. 56.) NDNY presiding U.S. District Judge Brenda K. Sannes adopted the recommendation on November 22, 2017, and transferred the action here without ruling

on the outstanding motions. (Doc. 60.)

On receiving the case, the Court held a status conference to determine how best to proceed, since this case mirrors the pending action *Dearth v. Hartford Fire Insurance Company*, Case No. 6:16-cv-1603-37KRS (M.D. Fla. Sept. 13, 2016) ("***Dearth***"), where the Court conditionally certified a collective action under the Fair Labor Standards Act ("**FLSA**") for the same claim of whether Analysts qualify as exempt, *Dearth* Doc. 163. (Doc. 90.) Hartford ultimately re-filed one motion to dismiss (Doc. 91), since resolved (Doc. 108), and Plaintiff re-filed this Motion.[1] As the Court heard argument on the Motion on May 15, 2018 ("**Hearing**"), the matter is ripe. (Docs. 117, 122.)

## II.  LEGAL STANDARD

"Questions concerning class certification are left to the sound discretion of the district court." *Griffin v. Carlin*, 755 F.2d 1516, 1531 (11th Cir. 1985). To certify a class action, the named plaintiffs must have standing, and the proposed class must: (1) be adequately defined and clearly ascertainable; (2) meet each of the requirements of Federal Rule of Civil Procedure 23(a); and (3) meet at least one of the requirements of Rule 23(b). *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012); *Busby v. JRHBW Realty Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). Rule 23(a) requires the plaintiffs to demonstrate that the proposed class satisfies the prerequisites of "numerosity, commonality, typicality, and adequacy of representation." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1189–90 (11th Cir. 2009) (citation omitted). To certify a class under Rule 23(b)(3), which

---

[1] Hartford also sought to stay discovery pending the resolution of this Motion (Doc. 92), which the Court denied (Doc. 103).

Plaintiffs seek here, the plaintiffs must demonstrate: (1) that questions of law or fact common to class members predominate over any questions affecting only individual members ("**predominance**"); and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("**superiority**"). *Id.*

Certifying a class involves "rigorous analysis of the [R]ule 23 prerequisites."[2] *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)). Although the class certification stage does not equal a determination on the merits, a court "can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Babineau*, 576 F.3d at 1190 (quoting *Valley Drug v. Geneva Pharm.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003)). Inescapably, sometimes the demands of class certification and whether the plaintiffs can succeed on the merits overlap, so "the principle that a district court should not evaluate the merits of plaintiffs' claims should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether [the] plaintiff[s] ha[ve] met [their] burden of establishing each of the Rule 23 class action requirements.'" *Id.* (quoting *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984)) (alteration omitted). To that end, a court may, if necessary, "look beyond the pleadings and examine the parties' claims, defenses, and evidence to ensure

<hr>

[2] As this action originated in NDNY, Hartford contends that Plaintiffs must prove each element by a preponderance of the evidence, the standard required in the Second Circuit. (Doc. 98, p. 12.) The Court notes that the U.S. Court of Appeals for the Eleventh Circuit has not explicitly adopted this standard for class certification. *See In re Photocromic Lens Antitrust Litig.*, MDL Doc. No. 2173, 2014 WL 1338605, at *5 n.12 (M.D. Fla. Apr. 3, 2014).

that class certification would comport with Rule 23's standards." *Id.*

## III. DISCUSSION

Plaintiffs seek certification of a Rule 23(b)(3) damages class action for their two NYLL claims. (Doc. 93, p. 8.) To proceed, the named plaintiffs must have standing. *See Busby*, 513 F.3d at 1321; *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). This threshold question is not in dispute, and the Court's independent review finds that the named plaintiffs have satisfied standing here. Each alleges they work or worked for Hartford for more than forty hours a week without receiving overtime pay. (Docs. 93-2–93-5, 93-8–93-11.) As this is a sufficient, cognizable injury giving rise to both NYLL claims, standing is met. *See Griffin*, 823 F.2d at 1482–83.

Next, the Court considers whether the proposed class is adequately defined and clearly ascertainable. *See Little*, 691 F.3d at 1304. Plaintiffs propose this class:

> All employees of Defendant who, from November 18, 2010 through the present ("Class Period"), worked for Defendant in New York, processed disability claims, were classified as exempt from overtime under [NYLL], were paid a salary, worked more than forty (40) hours in a single work week, and were not paid overtime at a rate of one and one-half times their regular rate of pay for any and all hours worked in excess of forty (40) hours in a single work week, and who did not receive accurate wage statements ("Class").

(Doc. 25, ¶ 19; *see also* Doc. 93, pp. 1 n.1, 4.) From this definition, Hartford identified 116 individuals who satisfy these criteria. (*See* Doc. 98-1, ¶ 5.) Those 116 individuals are employees from three departments within Hartford's Group Benefits Claims Field Operations ("**GBC**") business group: (1) Long-Term Disability ("**LTD**"); (2) Short-Term Disability ("**STD**"); and (3) Continuing Annual Review ("**CAR**"). (Doc. 98-1, ¶ 6.)

Hartford's derivation of potential class members shows the Court that Plaintiffs' proposed class meets ascertainability. *See Karhu v. Vital Pharm, Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015) (noting ascertainability requires "the class definition contain[] objective criteria that allow for class members to be identified in an administratively feasible way").[3] With these threshold requirements down, the Court turns to the Rule 23 requirements.

### A.      Rule 23(a) Requirements

To certify their proposed class, Plaintiffs must meet numerosity, commonality, typicality, and adequacy under Rule 23(a).

### 1.      Numerosity

Numerosity is met when "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). Generally, a class of less than twenty-one is inadequate, but more than forty suffices. *Vega*, 564 F.3d at 1267. Plaintiffs must make "*some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Id.*

Here, Plaintiffs rely on their declarations and a phone list of Hartford employees to show that their proposed class has at least sixty-eight members. (Doc. 93, p. 8 (citing Doc. 93-2).) That numerosity is met here is confirmed by Hartford's records, identifying 116 individuals who could be part of Plaintiffs' proposed class. (Doc. 98-1, ¶ 5.) Breaking

---

[3] While unpublished opinions are not binding precedent, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

this number down, the clear majority stem from the LTD department—108 to be exact. (*Id.* ¶ 10.) Numerosity exists here.

### 2.    Commonality

Commonality requires there be "questions of law or fact common to the class." Rule 23(a)(2). Unlike predominance, commonality is a "relatively light burden." *Vega*, 564 F.3d at 1256. It requires "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).

Here, the common question of law for the proposed class is whether Hartford properly classified these employees as exempt. (Doc. 93, pp. 11–14.) With this—and without Hartford's dispute (*see* Doc. 98)—the Court finds that commonality is met.

### 3.    Typicality

Typicality requires the claims or defenses of the representative parties to be typical of the claims or defenses of the class. Rule 23(a)(3). Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at-large. *Busby*, 513 F.3d at 1322. A class representative's claim is typical if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Williams*, 568 F.3d at 1357 (citation omitted). To meet typicality, a class representative must possess the same interest and suffer the same injury as the class members. *Id.* (citation omitted). This requirement may still be satisfied despite substantial factual differences when a strong similarity of legal theories exists. *Id.*

Plaintiffs claim typicality is met because the named plaintiffs, who would serve as class representatives, bring the same legal claim as all class members. (Doc. 93, pp. 15–16.) Be that as it may, evaluating that legal claim—whether Hartford properly classified these employees as exempt—requires information about an employee's job duties and responsibilities.[4] *See* 29 C.F.R. §§ 541.200(a)(1)–(3); 541.202(a)–(f); *see also, e.g.*, *Adams v. BSI Mgmt. Sys. Am., Inc.*, 523 F. App'x 658, 660–61 (11th Cir. 2013) (per curiam). As it stands, the named plaintiffs only worked in the LTD department during the class period—yet the class definition encompasses employees from both the STD and CAR departments. (*See* Doc. 98, pp. 32; *see also* Doc. 98-1, ¶¶ 19–21.) Generally, factual variations among representatives and class members will not defeat typicality, *see Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), but the Court is troubled by this lack of representation—especially because the named plaintiffs who were deposed were unable to speak to the job duties of other departments (*see* Docs. 50-1 (Karen Andreas-Moses), 50-3 (Amy Cook), 50-5 (Elizabeth Wagner), 50-7 (Stephanie West), 50-9 (Joseph Wojcik), 50-11 (Jacqueline Wright))—and when the Court asked Plaintiffs' Counsel about this issue during the hearing, the response spoke about a named plaintiff who still did not work in either missing department (*see* Doc. 122, pp. 6–7 (discussing Stephanie West who worked as a Premium Waiver Analyst)). In that same exchange, Plaintiffs' Counsel maintained that Hartford's internal documents require all

---

[4] NYLL effectively incorporates the administrative exemption of the Fair Labor Standards Act, 29 C.F.R. § 200, so such NYLL claims "are analyzed in the same manner." *See, e.g.*, *Krause v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 10 Civ. 2603(RMB), 2011 WL 1453791, at *5 n.3 (S.D.N.Y. Apr. 13, 2011).

Analysts, regardless of department, to follow the same processes. (*Id.*)

Having reviewed those submissions, the Court notes that in some areas, the STD and LTD Analyst's procedures are combined (*e.g.*, Doc. 101-4, pp. 29, 33 (causality investigation standard and test change standard for both STD and LTD Analysts)), but not all (*e.g. id.* pp. 5, 8 (initial contact requirements for STD differ from LTD)). What is more, the duties of a CAR Analyst are not included in Plaintiffs' submission from the Claims Excellence Manual (Docs. 101-4–101-6), nor the EDM Practical Application Guide (Doc. 101-15.) So, despite Plaintiffs' assertion, on this record, the Court is not convinced that a sufficient nexus exists between the named plaintiffs in the LTD department and the proposed class's inclusion of STD and CAR Analysts. *See Busby*, 513 F.3d at 1322. With its judicial scissors, therefore, the Court will trim STD and CAR Analysts from the class. This cut's not too deep though; as the Court finds that Plaintiffs meet typicality for the LTD Analysts.

### 4.     Adequacy

Adequacy requires that both the named plaintiffs and their counsel will fairly and adequately protect the interests of the class. Rule 23(a)(4). This requirement "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby*, 513 F.3d at 1323 (citation omitted).

Hartford contests adequacy based on: (1) Plaintiffs' lack of named representatives from the STD and CAR departments; (2) some named plaintiffs' disingenuous declarations submitted with the Motion; and (3) the applicability of arbitration and

release defenses to potential class members. (Doc. 98, pp. 32–33.) The Court has taken care of two of these concerns: by clipping the class of STD and CAR employees and granting Hartford's motion to dismiss based on arbitration (Doc. 108). Furthermore, the Court addressed the discrepancy between the declarations and deposition testimony at the Hearing (*see* Doc. 122, pp. 14–20), and finds that this issue does not defeat adequacy. Rather, the named plaintiffs seek to commonly adjudicate whether they were properly classified as exempt and recover wages accordingly. Thus, adequacy is met here.

So the Court finds that Plaintiffs have established the Rule 23(a) elements for a class of LTD Analysts. Next, Rule 23(b)(3).

### B.     Rule 23(b)(3) Requirements

Beyond meeting Rule 23(a), Plaintiffs must meet the requirements of Rule 23(b)(3), where they seek certification. *See Klay v. Humana*, 382 F.3d 1241, 1250 (11th Cir. 2004), *abrogated in part on other grounds by Bridge v. Phx. Bond & Indem.Co.*, 553 U.S. 639 (2008). There are two requirements here: predominance and superiority. Rule 23(b)(3).

### 1.     Predominance

Predominance means "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Babineau*, 576 F.3d at 1191 (quoting *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1557–58 (11th Cir. 1989)). "Common issues of fact and law predominate if they ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Id.* (quoting *Klay*, 382 F.3d at 1255 (11th Cir. 2004) (internal quotation marks and

citation omitted)). But common questions do not predominate over individual questions if, "as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Id.* (quoting *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996)). A class should not be certified if the "plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." *Id.* (quoting *Klay*, 382 F.3d at 1255). Evaluating predominance requires examining the claim, defenses, relevant facts, and applicable substantive law "to assess the degree to which resolution of the class[-]wide issues will further each individual class member's claim against the defendant." *Id.* (quoting *Klay*, 382 F.3d at 1254.)

For both the merits of Plaintiffs' claims and their damages, Hartford argues that individual issues control. (Doc. 98, pp. 21–32.) On the merits, each class member's entitlement to overtime pay turns on whether they were properly classified as exempt under NYLL's (and FLSA's) administrative exemption. 12 N.Y. Comp. R & Regs. § 142-2.14; 29 C.F.R. § 541.200. Specifically, the question here is whether the primary duty of LTD Analysts includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(3). Proving this, Hartford argues, is an individual-centric inquiry that cannot be extrapolated on a class-wide basis. (Doc. 98, pp. 23–27.) Plaintiffs maintain that the merits can be resolved through common evidence, namely Hartford's internal policies and procedures that Analysts were required to follow. (Doc. 101, p. 10.)

In the Court's view, resolving the merits of Plaintiffs' claims can be achieved

through proof common to all class members. Indeed, the heart of this case is Hartford's uniform decision implemented on November 12, 2012, to classify non-exempt Analysts as exempt in a process called "**Segmentation**." (*See* Docs. 93-1, 101-17, 101-24.) As applied to LTD claims, Segmentation broke them up by type: Segment I, Segment II, and Segment III. (*E.g.*, Doc. 101-17, pp. 5–6.) Analyst positions, therefore, corresponded to the "Segment" of claims they handled. (*Id.*; *see also* Docs. 50-1, pp. 9–11 (Andreas-Moses describing herself as a Segment II Analyst, but pre-segmentation she handled all types of claims); 50-3, pp. 24–25 (Cook describing segmentation); 50-5, pp. 10–16 (Wagner discussing segmentation); 50-7, pp. 20–22, 125, 145 (same for West); 50-9, pp. 10–17 (same for Wojcik); 50-11, pp. 20–24, 79–88 (same for Wright).) All Segment II and Segment III employees were classified as exempt until November 27, 2016, when Hartford re-classified them as non-exempt. (Doc. 98-1, ¶ 23.)

With this, the record reflects that Hartford categorically decided exemption status from the type of claim an Analyst handled. Yet now, Hartford argues that class certification is improper because exemption status can only be determined on individual assessment of the employee. Hartford cannot have its cake and eat it, too. That Hartford employed an all-or-nothing approach with Segmentation persuades the Court that the merits here are subject to common proof.[5] Such proof includes the Analysts' job duties

---

[5] *Cf. Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) (rejecting the defendant's argument that individual issues involved in the FLSA exemption inquiry require decertifying a collective action when the defendant "collectively and generally decide[d] that all store managers are exempt from overtime compensation without any individualized inquiry while, on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption").

and responsibilities, limits on their authority, ability to make independent choices, and more. *See* 29 C.F.R. §§ 541.202(a)–(b). Hartford's Claims Excellence Manual speaks directly to this (*see* Docs. 101-4–101-6), and across the board, Plaintiffs' deposition testimony correlates for how Analysts handled claims. (*E.g.*, Docs. 50-1, pp. 30–71 (Andreas-Moses describing how to process claims); 50-3, pp. 49–80 (same for Cook); 50-5, pp. 34–43 (same for Wagner).) On this record, the Court finds that a merits determination of whether LTD Analysts were properly classified as exempt post-Segmentation satisfies predominance. The Court will again employ judicial paring to trim the proposed class period from November 18, 2010 to start November 12, 2012.

The same cannot be said, however, for Plaintiffs' damages. Principally, these Analysts seek to recover unpaid overtime for all weeks they worked more than forty hours. (Doc. 25, ¶¶ 84–86.) But the elephant in the room is that Plaintiffs don't know, beyond guesstimates, how many hours they worked—they were exempt and didn't track hours. So by nature, determining the Analysts' entitlement to overtime pay will require an individualized inquiry into how much they worked at any given time. Now, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate," *so long as* Plaintiffs "come forward with *plausible* statistical or economic methodologies to demonstrate [damage] impact on a class-wide basis." *See Klay*, 382 F.3d at 1259 (citation and quotation marks omitted) (emphasis added). "Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification." *Id.*

When asked at the Hearing how Plaintiffs intended to prove damages on a class-wide basis, Counsel stated "there's a formulaic way through the log reports and the phone records and an email sent . . . to prove their damages." (Doc. 122, p. 30.) This representation nodded to an expert retained in a previous suit against Hartford who analyzed overtime worked by eleven Hartford employees during a three-year period.[6] (*See id.* (Plaintiffs' Counsel stating, "In fact, in *Monserrate*, [Hartford] actually used the logger reports. And the expert said that's a precise and reliable measure of the hours these individuals were working.").) The Court reviewed his report. (*See* Doc. 101-21 ("**Expert Report**").) Critically, it states:

> As the eleven opt-in plaintiffs do not constitute a scientifically selected sample and given the individual variation in work schedules described in this report, the data, statistics, calculations and summaries for the plaintiffs should not be considered representative of a larger class of employees. Analysis of overtime hours worked should be conducted on an individualized basis. If an individualized approach is not feasible, then great care should be taken to select a sample from the larger population using commonly accepted scientific methods to limit sampling error and avoid a potentially biased and misleading sample.

(*Id.* at 5.) For creating a representative sample that could apply to larger groups, the Expert Report stated:

---

[6] That case, *Monserrate v. Harford Fire Ins. Grp.*, Case No. 6:14-cv-149-37GJK (M.D. Fla. 2014), was a FLSA collective action where the Court conditionally certified a class. *Id.* Doc. 129 (July 2, 2015).

### *Applicability to Other Employees*

The analysis of a sample or subgroup is a commonly used scientific method of efficiently drawing inference about a larger population. Once a sample is properly chosen, statistical measures of the sample provide estimates of one or more characteristics of the larger population. The sample is *representative* of the larger population only when it is chosen using sound methods, a fact often considered in litigation. In a simple random sample, a commonly used approach, each member of the population has an equal probability of being chosen for the sample. A stratified random sample is another commonly used method in which individuals are organized into meaningful groups or strata and then a random sample is taken from each group. Stratified random sampling is appropriate when an inference about each group is desired. It may be preferred to simple random sampling when substantial variation exists across groups.[19] Simple and stratified random samples can be selected using a computer program once the population of interest is defined.[20]

A *biased* sample is one that produces estimates that are not representative of the population of interest. A sample contains nonresponse error when individuals chosen for the sample are not available, refuse to participate or are deemed ineligible for participation for various reasons. Nonresponse may create a biased sample if those who choose to participate are systematically different than the population of interest. Relying on a conveniently available sample, such as the eleven opt-in plaintiffs in this case, will likely lead to *selection bias* and may produce inferences that are misleading when applied to a larger population.

Before drawing conclusions from sample data, the investigator should also consider sampling error. Sampling error occurs because a sample cannot give complete information about a population and exists even when a sample is properly constructed. Sampling error differs from the bias introduced by nonresponse and convenience sampling which is also known as non-sampling error. Sampling error can be measured, whereas non-sampling error cannot.[21] The sampling error, which depends on both the sample size and the amount of variation in the alleged unpaid work, is larger when using smaller samples than when using larger samples, all else equal.

(*Id.* at 15–16.) The Expert Report concluded with another cautionary note about taking this methodology and outcome and applying it to a larger group:

The analysis described in this report using data for eleven opt-in plaintiffs should not be applied to other employees or putative class members. At a minimum, the exercise should provide evidence of the need for an individualized approach given the variation in schedules and weekly hours. Moreover, the eleven plaintiffs were not selected in a scientific manner and any inference drawn about a larger putative class of employees may be biased and misleading. If the number of putative class members is too large to construct an individualized analysis, and it is determined that a representative sample should be constructed, then great care and consideration should be taken to ensure the sample is chosen scientifically.

(*Id.* at 16.) From this, the Court simply cannot accept Plaintiffs' Counsel's statement that using logger data, phone records, and email stamps is an appropriate method of proving class-wide damages for the 108 LTD Analysts here. The issue could have been mitigated had Counsel presented information about how a representative sample could be chosen here, in a scientifically sound and un-biased manner to assure the Court this option was possible. *See Tyson Foods Inc v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016) (setting out reliability standards for sampling). But the Court did not get even an inkling from Plaintiffs to that effect. (*See* Doc. 122, pp. 31–33.) The Court thus cannot certify Plaintiffs' damages issue for class-wide determination.

That said, Plaintiffs' Counsel proposed bifurcating the merits from damages should the Court find that individual inquiries predominate in the damages context. (*See* Doc. 101, p. 12; Doc. 122, p. 28.) For this, the Court weighs the issues surrounding damages against the benefits of resolving the merits on a class-wide basis. *See, e.g.*, *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1309 (N.D. Fla. 2017). In that vein, the Court finds that determining whether the LTD Analysts post-Segmentation were properly classified as exempt is well-achieved through class certification, and it is time

this issue was settled. Indeed, the Court is not too keen on engaging yet another round

of "Did Hartford properly classify its Analysts?", since it would clearly crop up again.[7]

Enough judicial resources have been spent. Thus the Court is satisfied that the common

merits question predominates over the individualized damages inquiry, and bifurcating

these two issues does not preclude certification of an issue class on the merits.

### 2.    Superiority

Superiority follows predominance, and it asks whether "a class action is superior

to other available methods for the fair and efficient adjudication of the [claims]." *Klay*,

382 F.3d at 1269 (quoting Rule 23(b)(3)). The inquiry focuses "not on the convenience or

burden of a class action suit *per se*, but on the relative advantages of a class action suit

over whatever other forms of litigation might be realistically available to the plaintiffs."

*Id.* (citation omitted). The outcome of the predominance inquiry "has a tremendous

impact on the superiority analysis . . . for the simple reason that, the more common issues

predominate over individual issues, the more desirable a class action lawsuit will be seen

as a vehicle for adjudicating the plaintiffs' claims." *Id.* (citation omitted). Rule 23(b)(3) has

four non-exhaustive factors to consider for superiority: (1) the interest of members of the

class in individually controlling the prosecution or defense of separate actions; (2) the

extent and nature of any litigation concerning the controversy already commenced by or

---

[7] The Court refers to the preceding cases Plaintiffs' Counsel has brought against
Hartford on behalf of Analysts seeking to recover overtime pay. *See Dearth v. Hartford Fire
Ins. Grp.*, Case No. 6:16-cv-1603 (M.D. Fla. 2016); *Monserrate v. Harford Fire Ins. Grp.*, Case
No. 6:14-cv-149-37GJK (M.D. Fla. 2014); *Hollinger v. Hartford Fire Ins. Grp.*, Case No. 6:11-
cv-59-Orl-PCF-TBS (M.D. Fla. 2011)

against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of the class action. Rule 23(b)(3)(A)–(D); *Klay*, 382 F.3d at 1269.

Hartford argues that a class action is not superior to individual litigation because each Plaintiff possesses a claim of significant value, which incentivizes them to pursue their claims outside the class action context. (Doc. 98, pp. 33–34.) This point is well-taken, as class actions generally involve aggregating small claims that might not be litigated otherwise. *See Klay*, 382 F.3d at 1270 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 813 (1985)). But even if this individual incentive exists, permitting this action to devolve into 108 separate actions litigating the same question is something the Court cannot do. *See id.* ("Holding separate trials for claims that could be tried together would be costly, inefficient, and would burden the court system by forcing individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts." (citation omitted)). Class resolution of the merits here is the way to go.

Hartford then attacks manageability, an element of superiority, in a last-ditch effort to defeat certification. (Doc. 98, pp. 34–35.) This argument largely regurgitates Hartford's previous concerns about: (1) how the administrative exemption will be proved; (2) employees subject to arbitration; and (3) determining overtime hours. (*See id.*) But with the Court's refashioned class definition and bifurcation of the class issue from damages, these concerns should be allayed. And if need be, the Court can revisit class certification as this action progresses, as "certification of a class is always provisional in

nature until the final resolution of the case." *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 988 (11th Cir. 2016) (citing Rule 23(c)(1)(C)). Indeed, "the power of the district court to alter or amend class certification orders at any time prior to a decision on the merits 'is critical, because the scope and contour of a class may change radically as discovery progresses and more information is gathered about the nature of the putative class members' claims.'" *Id.* (citing *Prado-Steiman ex. rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000)). As it stands, the Court finds that litigating the exemption issue as a class does not pose management concerns.

With this, the Rule 23(b)(3) factors favor class certification for determining the merits of Plaintiffs' claims. The Court will exercise its discretion under Rule 23(c)(4) to certify a merits-only class and bifurcate damages from the merits.

## C.    Class Definition

Having found that the merits of Plaintiffs' claims justify class certification, the Court certifies the following liability-only class for Plaintiffs' overtime and wage statements claims:

> All employees of Defendant who, from November 12, 2012 through the present, work and/or worked for Defendant in New York as LTD Analysts, were classified as exempt from overtime under the New York Labor Law, were paid a salary, worked more than forty (40) hours in a single work week, and were not paid overtime at a rate of one and one-half times their regular rate of pay for any and all hours worked in excess of forty (40) hours in a single work week, and who did not receive accurate wage statements.

This trimmed-down class definition reflects the record as it stands, with class representatives from the LTD Department and Hartford's wholesale decision to re-classify their employees as exempt through Segmentation. Now, notice must be provided

to potential class members since this class is certified under Rule 23(b)(3). *See* Rule 23(c)(2)(B). To that end, the parties are directed to put their heads together and submit a fitting joint proposed notice. *See* Rule 23(c)(2)(B)(i)–(vii).

### D.   Class Counsel

Last, the Court decides whether to appoint Plaintiffs' Counsel as Class Counsel. *See* Rule 23(g). For this, the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Rule 23(g)(1)(A)(i)–(iv).

Considering these factors, the Court finds it appropriate to appoint Plaintiff's Counsel Class Counsel. To date, Plaintiffs' Counsel has worked to identify the claims and issues involved here. Also, Plaintiffs' Counsel has substantial knowledge and experience litigating the administrative exemption issue, particularly against Hartford.[8] As such, the Court is convinced that Plaintiffs' Counsel is committed to representing this class and will expend necessary resources to resolve this action. Looking at *Dearth*, the amount of motion practice in its discovery phase to date is troublesome. Moving forward here, the Court is hopeful there will be less noise and more discernment; less fury and more focus,[9] between the litigants and their counsel. The Court expects both Plaintiffs' Counsel and Hartford to work diligently and cooperatively to effectively manage this suit.

---

[8] *See supra* note 7.
[9] *See* Frank Bruni, *How to Re-elect Trump*, N.Y. Times, June 14, 2018, at A27.

### IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiffs' Motion for Class Certification and Appointment of Plaintiffs' Counsel as Class Counsel is **GRANTED IN PART and DENIED IN PART**.

2.  The Court certifies a merits-only class, as defined in Section III.C. of this Order.

3.  On or before **Friday, June 22, 2018**, the parties must submit a joint proposed notice to the Court.

4.  The named plaintiffs are **APPOINTED** as class representatives.

5.  Plaintiffs' Counsel Mary E. Lytle and David V. Barszcz of Lytle & Barszcz and Brian J. LaClair of Blitman & King are **APPOINTED** as class counsel.

6.  As outlined in this Order, this case will proceed in two phases: merits and damages. In light of this, the parties are **DIRECTED** to meet and confer within fourteen days and re-submit a Case Management Report. The Court will then prepare a Case Management and Scheduling Order.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 18, 2018.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record