UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KAREN ANDREAS-MOSES,  )
ELIZABETH WAGNER, JACQUELINE  )
WRIGHT, MIKAELA DELPHA, STEPHANIE  )
WEST, JOSEPH J. WOJCIK, TINA PALMER  )
and AMY COOK, on behalf of themselves and  )
others similarly situated,  )
 )
    Plaintiffs,  )
v.  )    **No. 6:17-cv-2019-Orl-37KRS**
 )
HARTFORD FIRE INSURANCE COMPANY,  )
a Foreign for Profit Corporation,  )
 )
    Defendant.  )
_____ )

## JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTTLEMENT AND NOTICE TO THE SETTLEMENT CLASS

KAREN ANDREAS-MOSES, ELIZABETH WAGNER, JACQUELINE WRIGHT, MIKAELA DELPHA, STEPHANIE WEST, JOSEPH J. WOJCIK, TINA PALMER, and AMY COOK ("Named Plaintiffs"), individually and on behalf of themselves and all others similarly situated as defined herein (collectively, "Plaintiffs") and HARTFORD FIRE INSURANCE COMPANY ("Defendant") jointly submit this Motion for Preliminary Approval of Class and Collective Action Settlement and Notice to the Settlement Class.

### I.    INTRODUCTION

This case was filed on November 18, 2016. ECF No. 1. The Named Plaintiffs are current and former Analysts employed by Defendant. ECF No. 25. They allege that Defendant misclassified them as exempt from overtime compensation and failed to provide them accurate wage statements in violation of the New York Labor Law ("NYLL"). *Id.* Defendant denies the allegations and contends that Plaintiffs were properly classified as exempt under the administrative

exemption of the NYLL.  ECF No. 118.  The parties also have significant disagreements over the number of hours worked by Plaintiffs.  These issues have been contested between the parties throughout two years of litigation.

The Named Plaintiffs also sought to represent a class of all other similarly situated employees.  ECF No. 25.  Plaintiffs moved for certification of a class action under Rule 23.  ECF No. 93.  The Court granted Plaintiff's motion in part and certified the following class:

> All employees of Defendant who, from November 12, 2012 through the present, work and/or worked for Defendant in New York as LTD Analysts, were classified as exempt from overtime under the New York Labor Law, were paid a salary, worked more than forty (40) hours in a single work week, and were not paid overtime at a rate of one and one-half times their regular rate of pay for any and all hours worked in excess of forty (40) hours in a single work week, and who did not receive accurate wage statements.

ECF No. 129.  The Court also appointed the Named Plaintiffs as class representatives and appointed Mary E. Lytle and David V. Barszcz of Lytle & Barszcz, and Brian J. LaClair of Blitman & King as Class Counsel.  *Id.*  The Court approved a Class Action Notice and a plan for distributing the notice.  ECF No. 144.  After the Notice was distributed, eleven (11) Class Members requested to be excluded from the Class.  The Court entered a Case Management and Scheduling Order setting discovery to close on November 9, 2018, and a jury trial to begin on May 6, 2019.  ECF No. 148.

Now, Named Plaintiffs have reached an agreement to settle this action with Defendant on a classwide basis.  The terms of the Settlement are contained in the Settlement Agreement and Release ("Settlement Agreement") attached as <u>Exhibit 1</u>.[1]  The Parties now seek entry of an order:

- Granting preliminary approval of the Settlement Agreement under Rule 23(e);

- Approving the form and content of the proposed Settlement Notice attached to the Settlement Agreement as Exhibit A;

---

[1] Exhibit 1 defines terms included in this Motion and also contains the proposed Settlement Notice.

- Approving and directing the mailing of the Settlement Notice to the Class Members by first class mail, consistent with the procedures specified in the Settlement Agreement; and

- Scheduling a Fairness Hearing following the close of the notice period at which the Parties will seek final approval of the Settlement Agreement under Rule 23(e).

The Settlement provides substantial benefits via a Settlement Fund established for the benefit of the Settlement Class. A third-party Settlement Administrator (JND Legal Administration) will administer the class settlement process monitored by defense counsel with updates provided to Class Counsel. Defendant will pay for the fees and costs of the Settlement Administrator, which includes the cost of the Settlement Notice by first class mail. Defendant will pay an agreed upon amount for attorneys' fees and expenses as set forth in the Settlement Agreement.

The proposed Settlement Agreement addresses Plaintiffs' litigation objectives and provides significant compensation to Class Members. The Settlement was negotiated by lawyers experienced in complex litigation and overtime cases who also had the benefit of various mediations. For these reasons, the Parties respectfully submit that this Settlement Agreement enjoys a presumption of fairness and should be preliminarily approved by the Court.

## II. **LEGAL STANDARD**

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The typical process for approval of class action settlements involves the following steps. First, at the preliminary approval stage, counsel submit the proposed terms of settlement, and the Court makes a preliminary fairness evaluation. MANUAL FOR COMPLEX LITIGATION § 21.632 (4th Ed. 2010). The Court also decides whether to certify the class action if it has not already done so. *Id.* Second, after preliminary approval, class members

are notified of the settlement and the date set for a fairness hearing. *Id.* § 21.633. Third, the Court holds a fairness hearing and determines whether to grant final approval of the settlement. *Id.* § 21.634-635. These procedures have now been codified into Rule 23(e), as discussed below.[2]

Prior to preliminary approval, the parties "must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). The parties must make a preliminary showing that the court "will likely" be able to: "(i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Rule 23(e)(2) inquiry, which is considered in more depth at the final fairness hearing, is whether the proposed settlement is "fair, reasonable, and adequate" after considering the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[3]

---

[2] Effective December 1, 2018, Rule 23(e) was amended as to class action settlement procedures.

[3] Prior to December 1, 2018, Rule 23 did not specify factors to consider, and different courts developed different approaches. The Eleventh Circuit, for example, considered the following factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Schorrig v. IBM Se. Emples. Fed. Credit Union, Se. Servs. Org., Inc.,* No. 09-CV-80973, 2011 U.S. Dist. LEXIS 163668, at *8 (S.D. Fla. Nov. 22, 2011) (citing *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984)).

"If the class action was previously certified under Rule 23(b)(3)," as is the case here, "the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed. R. Civ. P. 23(e)(4). Relatedly, class members should have the right to object to a settlement proposal prior to final approval. Fed. R. Civ. P. 23(e)(5).

If the parties make the preliminary showing that the court "will likely" find the proposed settlement fair and the class certifiable, then "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

"There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Schorrig v. IBM Se. Emples. Fed. Credit Union, Se. Servs. Org., Inc.,* No. 09-CV-80973, 2011 U.S. Dist. LEXIS 163668, at *7 (S.D. Fla. Nov. 22, 2011); *see also Allapattah Servs. v. Exxon Corp.,* No. 91-0986, 2006 U.S. Dist. LEXIS 88829, at *36 (S.D. Fla. Apr. 7, 2006) ("This Court reviews a proposed class action settlement with the knowledge that there is a strong judicial policy that favors settlement."). "This policy [in favor of settlement] has special importance in class actions with their notable uncertainty, difficulties of proof, and length." *Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1379 (S.D. Fla. 2007). "In assessing [the fairness] factors, the Court should be hesitant to substitute its own judgment for that of counsel." *Schorrig,* 2011 U.S. Dist. LEXIS 163668, at *8. "Within this framework, a district court ought not to try the case during the settlement hearing and . . . should not make a proponent of the proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might be gained." *Allapattah Servs.,* 2006 U.S. Dist. LEXIS 88829, at *37 (quotation omitted). The determination of whether or not a

class settlement is fair and reasonable is entrusted "to the sound discretion" of the district court. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984);

### III. THE PROPOSED SETTLEMENT CLASS MEETS THE STANDARDS FOR CERTIFICATION.

Here, the Court has already found that the prerequisites of class certification are met under Rule 23. ECF No. 129. Therefore, the Court will be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

### IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

#### A. Discovery and Settlement Negotiations

During this litigation spanning over two years, the parties have vigorously litigated and negotiated this action culminating in a settlement notified to the Court on November 14, 2018, deemed by the parties to be fair and equitable. Over the last two years, there has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter. The Parties exchanged information through extensive discovery, including information regarding Plaintiffs' hours and pay, their positions and job duties, and the procedures they used to process disability claims.

In agreeing upon the proposed settlement in this case, the Parties had an abundance of information and conducted an extensive investigation to allow them to make an educated and informed analysis and conclusion. Plaintiffs asserted claims for overtime compensation allegedly due for certain periods during which they were employed as analysts. Defendant contends, and Plaintiffs deny, that Plaintiffs were employed in a bona fide administrative capacity and were, therefore, exempt employees under the NYLL. There is a genuine dispute as to whether the administrative exemption applies to Plaintiffs. These issues were contested between the parties

giving rise to litigation spanning two years. Both Plaintiffs and Defendant contend that they have accumulated factual support and legal authorities supporting their position with respect to application of the administrative exemption.

In addition, Plaintiffs were not required to record the number of hours they worked during the relevant time period. They therefore had to estimate the number of hours worked, relying on their memories and inferences from data such as the times they logged on and off of Defendant's computer system and phone system. Defendant disputed those estimates, pointing to discrepancies in the number of hours claimed at different points in the litigation and drawing the opposite inferences from the electronic data available. As such, there is a clear dispute between the parties concerning the actual number of hours worked by the allegedly misclassified analysts and the potential damages that would be available if Plaintiffs were found to be misclassified. The range of possible recovery by Plaintiffs is also open to dispute based upon the different methods of calculating damages, which is dependent on other disputed factual issues. Even if Plaintiffs succeed on the merits of their claims, which would require substantial additional time and exercise of resources by both parties, the exact amount of their recovery is uncertain.

During informal settlement negotiations and various mediations, the Parties spent numerous hours to come to a fair and equitable settlement that took into account the Plaintiffs' probability of success on the merits of the exemption issues and the uncertainty of the amount they may have recovered. Additionally, a variety of damages models were prepared and evaluated based on the Parties' respective positions regarding the number of hours worked by Class Members. After carefully and thoroughly considering the above-referenced factual disputes, Defendant and Named Plaintiffs agreed to compromise the claims of all Plaintiffs. In the course of extensive settlement negotiations, Defendant and Plaintiffs utilized their respective data

analyses to come to an agreeable settlement amount. As a result, the settlement was a compromise between Plaintiffs' calculations and Defendant's calculations. The Parties negotiated through various mediations and extensive informal settlement discussions to come to an agreeable and equitable compromise between the parties' positions.

The complexity, expense, and length of future litigation also weigh in favor of this settlement. Plaintiffs and Defendant continue to strongly disagree over the merits of the claims asserted by Plaintiffs. If the parties continued to litigate this matter, they would be forced to engage in a costly trial expected to last at least several weeks to over a month in order to present their claims and defenses to the Court. The trial would be complex, involving numerous witnesses including experts and a searching inquiry into the technical world of processing disability insurance claims. Nor is there any guarantee that Plaintiffs would prevail at trial. The administrative exemption is an inherently subjective and fact-specific standard that makes any outcome uncertain. An appeal of any verdict favorable to Plaintiffs could further risk or delay receipt of any proceeds from the litigation. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

In this regard, the Parties have made a preliminary showing that the proposed settlement will likely be found fair, reasonable, and adequate because "the proposal was negotiated at arm's length," "the class representatives and class counsel have adequately represented the class," and "the costs, risks, and delay of trial and appeal" are substantial. Fed. R. Civ. P. 23(e)(2)(A), (B), (C)(ii). Certainly, this "was not a 'file and settle' or 'file and trial' type case," as is demonstrated by the fact that it has been litigated over the course of two years. *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 U.S. Dist. LEXIS 146073, at *18 n.10 (S.D. Fla. Apr. 15, 2010). Rather, the proposed Settlement Agreement is "the product of good faith, arm's-length negotiations

between Class Counsel and counsel for the Defendant;" "there is no indicia of fraud or collusion among the parties;" "this highly complex case was adequately developed before settlement such that Class Counsel had an adequate appreciation of the merits before negotiating;" and "Class Counsel incurred considerable risk and expense in taking on this matter with no guarantee of success — expense and risk that would have been greatly compounded had this matter proceeded to trial." *Id.* at *18 (approving Rule 23 settlement); *see also Perez,* 501 F. Supp. 2d at 1380 ("Where a substantial question exists regarding the likelihood of success at trial, this factor weighs in favor of approving a proposed class action settlement.").

### B.  The Terms of the Proposed Settlement Agreement

#### 1.  Relief Available to Class Members

The complete terms of the proposed Settlement Agreement are attached as Exhibit 1. Under the Settlement Agreement, Defendant will provide significant monetary relief to Class Members. The Settlement Class is comprised of all current and former employees of Defendant who fall under the definition of the class previously certified by the Court, excepting those who exclude themselves. Defendant will create a Settlement Fund in the amount of $670,508.61, available for distribution to the Settlement Class (including the Named Plaintiffs). The Settlement Fund will cover all payment obligations of Defendant, except for (1) attorneys' fees and costs awarded to Class Counsel (as discussed below) and (2) costs associated with the Settlement Administrator.

Class Members who do not opt out will receive a share of the Settlement Fund. Class Counsel developed an equitable distribution of the Settlement Fund, using certain factors to determine a fair and equitable settlement and to calculate the pro-rata distribution of the settlement proceeds amongst Class Members. In this regard, the following factors were utilized: (i) the

number of weeks the Class Member worked in a particular job during the relevant time period; (ii) the number of weeks worked by the Class Member during the class time period; (iii) the particular Class Member's rate of pay; (v) the particular Class Member's Analyst position; (vi) the estimate of hours based upon Plaintiffs' estimate of hours as well as Defendant's records; and, other factors related to the legal risks associated with continued litigation and trial. The amount paid to each Class Member pursuant to this pro-rata distribution is captured in Exhibit B to the Settlement Agreement. The payment amounts the Class Members will receive, if they do not opt out, range from $1,000.00 to $60,955.60, and were based upon the factors detailed above.

These payments are substantial when considering the significant risk that Plaintiffs could recover nothing after trial. Thus, the Court "will likely" be able to find that the proposed settlement is fair, reasonable, and adequate because "the relief provided for the class is adequate," and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C), (D).

### 2. Settlement Notice and Settlement Administration

Under the Settlement Agreement, JND will provide Notice by first-class mail to each of the Class Members. The Parties believe that first-class mail will reach all Class Members and have no reason to believe that first-class mail will be inadequate. Rule 23 recognizes that notice by U.S. mail can constitute the best notice practicable. Fed. R. Civ. P. 23(c)(2)(B); *see also* MANUAL FOR COMPLEX LITIGATION § 30.211 (stating that notice by first-class mail is practical where, as here, the names and addresses of most of the class members are known). Further, in the Settlement Agreement, the Parties have agreed to take additional measures to notify Class Members if the initial mailing is returned as undeliverable.

The proposed Settlement Notice is attached as Exhibit A to the Settlement Agreement. The proposed Settlement Notice summarizes the nature of action and claims asserted, the definition of

the class certified, the key terms of the Settlement Agreement, the relief provided under the Settlement Agreement, the potentially binding of effect of the Settlement Agreement if approved, and the date, time and place of the Fairness Hearing.  The Settlement Notice also explains options available to Class Members, including the right to enter an appearance through an attorney and procedures for requesting exclusion and filing objections.  The Settlement Notice states that Class Members will have 60 days after the Notice is mailed to submit objections and requests to be excluded from the settlement.

The Settlement Notice includes all of the information required by Rule 23(c)(2)(B) in language that is plain and easily understood.  The proposed Settlement Notice is accurate and informs Class Members of the material terms of the Settlement Agreement and their rights and options prior to final approval. Thus, the proposed settlement is "fair, reasonable, and adequate" after considering "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  The Court should approve the proposed form of Settlement Notice and direct that it be sent to Class Members as proposed by the Parties in the Settlement Agreement.

Defendant has selected the Settlement Administrator, JND Legal Administration, to send the Settlement Notice and perform other tasks associated with administration of the class settlement.  Defendant will pay the fees and costs of the Settlement Administrator, which includes the cost of Settlement Notice, accounting issues associated with the provision of W-2s and 1099s to participating Class Members, cutting and distributing settlement checks to participating Class Members, answering questions concerning administration of the settlement and handling all settlement administration issues arising in the ordinary course of business.  Aside from Defendant's anticipated agreement to pay the fees and costs of Settlement Administrator, there are

no other agreements made in connection with the settlement proposal that must be disclosed under Rule 23(e)(2)(C)(iv) and (e)(3).

### 3. Opt-Out and Release Provisions

Under the Settlement Agreement, Class Members will be provided a new opportunity to "opt out" and exclude themselves from the Settlement Agreement, as well as an opportunity to file objections with the Court. Class Members who opt out during the 60 day Notice Period will not be bound by the terms of the Settlement Agreement, and their claims will be dismissed *without prejudice*.[4] These provisions of the Settlement Agreement support approval under Rule 23(e)(4) and (e)(5).

After expiration of the 60-day Notice Period, the Parties will move for final approval of the settlement. Assuming a final hearing is held and the Court grants final approval of the Settlement Agreement, Class Members who do not opt out will be sent a check payment for their respective shares of the Settlement Fund. These participating Class Members will have 90 days to cash their settlement checks. Any settlement checks that are not cashed within 90 days of issuance will be subject to a stop-payment order and the funds will remain the property of Defendant unless Defendant decides to re-issue any check that was not cashed within 90 days. The Class Members who did not opt out will release all claims brought in this case, based upon a Named Plaintiff's or Class Member's alleged misclassification as an exempt employee, and this release will run in favor of Defendant and related entities.

### 4. Attorneys' Fees and Expenses

---

[4] If five (5) or more Class Members request to be excluded from the Settlement Class or the Class Members who request to be excluded represent more than 15% of the Settlement Fund, then Defendant may exercise an option to void the Settlement Agreement. These provisions serve the interest of finality, as the benefit of settlement is minimal for Defendant if too many Class Members opt out and protracted litigation continues.

At the conclusion of lengthy negotiations, including mediations, the Parties finally reached a settlement. After Plaintiffs' Counsel consulted with Plaintiffs and determined how much the Plaintiffs required to settle the case, Counsel for the Plaintiffs then communicated to Defendant's Counsel that amount as well as the amount of fees for Plaintiffs' Counsel, and the parties agreed to settle upon those numbers. Plaintiffs' claims were not compromised in any way by the amount paid in attorney's fees and costs. In addition, given the complexity of the case and the tenacity of the defense, counsel for the parties agree that the amount of attorneys' fees and costs recovered by Plaintiffs' counsel for this litigation spanning over two years is just and reasonable. Class Counsel will apply to the Court for approval of the payment of no more than the agreed upon amount of $223,500.00 in attorneys' fees and costs. This amount is equal to 25% of the total amount Defendant is agreeing to pay under the Settlement Agreement (including the $670,508.61 Settlement Fund), which is well within the range of attorneys' fees awarded as a reasonable percentage in common fund cases. *See Faught v. Am. Home Shield Corp.,* 668 F.3d 1233, 1243 (11th Cir. 2011) ("In approving the fee award, the district court began by citing well-settled law from this court that 25% is generally recognized as a reasonable fee award in common fund cases."); *David*, 2010 U.S. Dist. LEXIS 146073, at *25-26 ("While there is no hard-and-fast rule identifying what sort of percentage constitutes a 'reasonable percentage,' the Eleventh Circuit has expressly noted that the 'majority of common fund fee awards fall between 20% to 30% of the fund' and has directed district courts to view this figure as a 'benchmark percentage fee award which may be adjusted in accordance with the individual circumstances of each case.'" (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 771, 775 (11th Cir. 1991)); *Hershey v. ExxonMobil Oil Corp.,* No. 07-1300, 2012 U.S. Dist. LEXIS 153803, at *22 (D. Kan. Oct. 26, 2012) ("[E]mpirical studies show that ... fee awards in class actions average around one-third of

the recovery." (quoting 4 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS, § 14:6 (4th ed. 2006)).

No later than 15 days prior to the Fairness Hearing, Class Counsel will file a separate application for approval of their attorneys' fees and costs with additional factual and legal authority. Defendant will not oppose Class Counsel's request, as long as it does not exceed $223,500.00. The total attorneys' fees and costs actually paid are to be approved by the Court in its Final Approval Order and will not affect Class Members' recoveries. Under the Settlement Agreement, Defendant will send Class Counsel payment for the attorneys' fees and expenses at the same time that Defendant sends settlement checks to Class Members, which will be after the Court grants final approval and the expiration or conclusion of any appeal process.

The Parties have made a sufficient preliminary showing that the proposed settlement is "fair, reasonable, and adequate" after considering the "the terms of any proposed award of attorney's fees, including timing of payment." Fed R. Civ. P. 23(e)(2)(C)(iii).

## V. **CONCLUSION**

The Parties have made the requisite preliminary showings that the proposed Settlement Agreement is "fair, reasonable, and adequate" under Rule 23(e)(1)(B) and (e)(2). The Parties respectfully request that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement Agreement. The preliminary approval determination is not an ultimate determination of whether the settlement is fair, reasonable and adequate. The preliminary approval is simply a determination to notify the class members of the proposed settlement and to set a fairness hearing. For all of the reasons stated herein, the Court should grant preliminary approval of the proposed settlement, approve the form and content of the proposed Settlement Notice, approve and direct the mailing of the Settlement Notice consistent with the

procedures set forth in the Settlement Agreement, and schedule a final fairness hearing. A proposed Order of Preliminary Approval is attached as Exhibit 2.

Respectfully submitted this 13th day of February, 2019.

| | |
|---|---|
| */s/Mary E. Lytle* | */s/ Tasos C. Paindiris* |
| Mary E. Lytle | Tasos C. Paindiris (Fla. Bar No. 41806) |
| Florida Bar No. 0007950 | JACKSON LEWIS P.C. |
| David Barszcz | 390 North Orange Avenue, Suite 1285 |
| Florida Bar No. 0750581 | Orlando, Florida 32801 |
| Lytle & Barszcz | Tel:    (407) 246-8440 |
| 543 N. Wymore Road, Suite 103 | tasos.paindiris@jacksonlewis.com |
| Maitland, FL 32751 | |
| Telephone: (407) 622-6544 | |
| Facsimile: (407) 622-6545 | Thomas Rohback (pro hac vice) |
| mlytle@lblaw.attorney | Axinn, Veltrop & Harkrider, LLP |
| dbarszcz@lblaw.attorney | 90 State House Square |
| | Hartford, CT 06103 |
| Attorneys for Plaintiffs | Tel: (860) 275-8100 |
| | trohback@axinn.com |
| | |
| | Attorneys for Defendant |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of February, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

>					*/s/ Mary E. Lytle*
>					Mary E. Lytle, Esq.