UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| KAREN ANDREAS-MOSES, ELIZABETH WAGNER, JACQUELINE WRIGHT, MIKAELA DELPHA, STEPHANIE WEST, JOSEPH J. WOJCIK, TINA PALMER and AMY COOK, on behalf of themselves and others similarly situated,<br><br>   Plaintiffs,<br><br>v.<br><br>HARTFORD FIRE INSURANCE COMPANY, a Foreign for Profit Corporation,<br><br>   Defendant. | No. 6:17-cv-2019-Orl-37KRS |

### JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

KAREN ANDREAS-MOSES, ELIZABETH WAGNER, JACQUELINE WRIGHT, MIKAELA DELPHA, STEPHANIE WEST, JOSEPH J. WOJCIK, TINA PALMER, and AMY COOK ("Named Plaintiffs"), individually and on behalf of themselves and all others similarly situated as defined herein (collectively, "Plaintiffs"), and HARTFORD FIRE INSURANCE COMPANY ("Defendant") jointly submit this Joint Motion for Final Approval of Class Action Settlement.

Since the Court preliminarily approved the parties' Settlement Agreement and Release ("Settlement Agreement," attached as Exhibit 1), notice was mailed to all Class Members. The reaction has been universally positive. Not a single class member objected to the terms of the Settlement Agreement. Not a single class member requested to be excluded from the class. Practically speaking, nothing has changed since the Court issued its Order granting preliminary

approval of the Settlement Agreement (ECF No. 183), confirming that the settlement is fair, reasonable, adequate, and should be finally approved.

## I. BACKGROUND

Plaintiffs are former employees of Defendant who allege that they were misclassified as exempt from the overtime requirements of the New York Labor Law ("NYLL"). ECF No. 25. The court previously granted Plaintiff's motion for class certification in part under Rule 23. ECF No. 93. The Court certified the following class:

> All employees of Defendant who, from November 12, 2012 through the present, work and/or worked for Defendant in New York as LTD Analysts, were classified as exempt from overtime under the New York Labor Law, were paid a salary, worked more than forty (40) hours in a single work week, and were not paid overtime at a rate of one and one-half times their regular rate of pay for any and all hours worked in excess of forty (40) hours in a single work week, and who did not receive accurate wage statements.

ECF No. 129. Subsequently, the parties engaged in extensive efforts to try and informally resolve their disputes. This culminated in the parties agreeing to the terms in the Settlement Agreement and presenting the same to the Court for preliminary approval. ECF No. 182.

On February 14, 2019, the Court granted the parties' Joint Motion for Preliminary Approval of Class Action Settlement and Notice to the Settlement Class. ECF No. 183. Specifically, the Court: (1) determined that the Settlement Agreement is fair, reasonable, and adequate and satisfied the elements of Rule 23(e)(2) for purposes of preliminary approval; (2) determined that the parties' notice to class members and means of facilitating notice were reasonable and otherwise complied with Rule 23(c)(2)(B); (3) appointed JND Legal Administration ("JND") as the Settlement Administrator; (4) prescribed the terms upon which Class Members may object and/or exclude themselves from the settlement; and, (5) set the

Fairness Hearing for June 18, 2019 and ordered that this Motion be filed at least fifteen (15) days prior. *Id*. In preliminarily approving the Settlement Agreement, the Court was satisfied that it "will likely" be able to: "(i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

In accordance with the Court's Order and as explained in the accompanying Declaration of Stephen Donaldson ("Donaldson Dec.," attached as Exhibit 2), the Court-approved Settlement Notice (ECF. No. 182-3) was issued to all 33 class members. Donaldson Dec. at ¶¶4-6. Not a single Settlement Notice was returned as undeliverable. The deadline for class members to object to the settlement and/or to exclude themselves from the settlement was April 30, 2019. *Id*. at ¶¶9-11. No class member submitted an objection to the Settlement Agreement. *Id*. at ¶10. No class member asked to be excluded from the Settlement Agreement. *Id*. at ¶11. The Settlement Agreement is unopposed.

## II. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

The Rule 23(e)(2) inquiry focuses on whether the proposed settlement is "fair, reasonable, and adequate" and takes into account the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)   any agreement required to be identified under Rule 23(e)(3); and

    (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). It is respectfully submitted that the Settlement Agreement is "fair, reasonable, and adequate" under Rule 23(e)(2) and should be finally approved. "[D]etermining the fairness of a [class action] settlement is a discretionary decision for the trial court, though it should be 'informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'" *United States ex rel. Balko v. Senior Home Care, Inc.*, No. 8:13-CV-3072-T-17TBM, 2017 WL 9398654, at *8 (M.D. Fla. May 2, 2017), report and recommendation adopted, No. 813CV03072EAKTBM, 2017 U.S. Dist. LEXIS 121003 (M.D. Fla. Aug. 1, 2017). "There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Schorrig v. IBM Se. Emples. Fed. Credit Union, Se. Servs. Org., Inc.*, No. 09-CV-80973, 2011 U.S. Dist. LEXIS 163668, at *7 (S.D. Fla. Nov. 22, 2011); *see also Allapattah Servs. v. Exxon Corp.*, No. 91-0986, 2006 U.S. Dist. LEXIS 88829, at *36 (S.D. Fla. Apr. 7, 2006) ("This Court reviews a proposed class action settlement with the knowledge that there is a strong judicial policy that favors settlement."). The "policy [in favor of settlement] has special importance in class actions with their notable uncertainty, difficulties of proof, and length." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1379 (S.D. Fla. 2007). "In assessing [the fairness] factors, the Court should be hesitant to substitute its own judgment for that of counsel." *Schorrig*, 2011 U.S. Dist. LEXIS 163668, at *8. "Within this framework, a district court ought not to try the case during the settlement hearing and . . . should not make a proponent of the proposed settlement justify each term of settlement against a hypothetical or

speculative measure of what concessions might be gained." *Allapattah Servs.,* 2006 U.S. Dist. LEXIS 88829, at *37 (quotation omitted). The determination of whether or not a class settlement is fair and reasonable is entrusted "to the sound discretion" of the district court. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

### a. *The Relief Afforded by the Settlement Agreement is Adequate and the Class Members are Treated Equitably Compared to each Other.*

The Settlement Agreement provides substantial benefits via a Settlement Fund established for the benefit of Plaintiffs. JND will administer the class settlement process monitored by defense counsel with updates provided to Class Counsel. The payment amounts the Class Members will receive range from $1,000.00 to $60,955.60. These payments are substantial given the significant risk that Plaintiffs could recover nothing after trial. *See* Section II(c), below.

Defendant will pay for the fees and costs of the Settlement Administrator. Defendant will pay an agreed upon amount for attorneys' fees and expenses as set forth in the Settlement Agreement.[1] The Settlement Agreement addresses Plaintiffs' litigation objectives and provides significant compensation to Class Members. Class and Defense Counsel are experienced class action litigators. The parties exchanged and reviewed thousands of pages of

---

[1] Class Counsel will apply to the Court for approval of the payment of no more than the agreed upon amount of $223,500.00 in attorneys' fees and costs. This amount is equal to 25% of the total amount Defendant is agreeing to pay under the Settlement Agreement (including the $670,508.61 Settlement Fund), which is well within the range of attorneys' fees awarded as a reasonable percentage in common fund cases. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) ("In approving the fee award, the district court began by citing well-settled law from this court that 25% is generally recognized as a reasonable fee award in common fund cases.").

documents and had sufficient information in their possession to evaluate their respective positions. Both sides strongly recommend that the Court approve the Settlement. *See Poertner v. Gillette Co.*, No. 6:12-CV-803-ORL-31DA, 2014 U.S. Dist. LEXIS 1166616 (M.D. Fla. Aug. 21, 2014), aff'd, 618 F. App'x 624 (11th Cir. 2015) (finding similar facts weighed in favor of approval of settlement).

Unquestionably, the Class Members are treated equitably compared to one another. Class Counsel developed an equitable distribution of the Settlement Fund, using certain factors to determine a fair and equitable settlement and to calculate the pro-rata distribution of the settlement proceeds amongst Class Members. In this regard, the following factors were utilized: (i) the number of weeks the Class Member worked in a particular job during the relevant time period; (ii) the number of weeks worked by the Class Member during the class time period; (iii) the particular Class Member's rate of pay; (v) the particular Class Member's Analyst position; (vi) the estimate of hours based upon Plaintiffs' estimate of hours as well as Defendant's records; and, other factors related to the legal risks associated with continued litigation and trial. The amount paid to each Class Member pursuant to this pro-rata distribution is captured in Exhibit B to the Settlement Agreement. Each Class Member could agree or disagree with his or her settlement allocation, and here, all agreed.[2]

Moreover, as noted above, all of the Class members have been notified of the Settlement Agreement. None objected. None asked to be excluded. All appropriate governmental entities have been notified of the Settlement Agreement, and none have objected.

---

[2] The class was certified only for liability, therefore the actual damages for each plaintiff would have been determined separate from the class.

6

*See* Section II(d), below. Class Counsel is not surprised at the lack of objections – the Settlement Agreement is a fair result for the Class Members. The complete absence of opposition to the Settlement Agreement favors a finding that it is fair, reasonable, and adequate. *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2017 U.S. Dist. LEXIS 91448, at *4 (M.D. Fla. June 5, 2017) ("The absence of opposition to the settlement militates heavily toward approval."). It is respectfully submitted that the Settlement Agreement provides adequate relief to the Class Members, and all Class Members are treated equitably relative to each other with respect to the benefits of the Settlement Agreement.

### b. *The Settlement Agreement was Negotiated at Arm's Length and Class Representatives and Counsel have Adequately Represented the Class.*

As explained in detail in the parties' Joint Motion for Preliminary Approval of Class Action Settlement, the Settlement Agreement was negotiated by lawyers experienced in complex litigation and overtime cases who also had the benefit of various mediations. During informal settlement negotiations and various mediations, the parties spent numerous hours to come to a fair and equitable settlement that took into account the Plaintiffs' probability of success on the merits of the exemption issues and the uncertainty of the amount they may have recovered. Additionally, a variety of damages models were prepared and evaluated based on the parties' respective positions regarding the number of hours worked by Class Members. In the course of extensive settlement negotiations, Defendant and Plaintiffs utilized their respective data analyses to come to an agreeable settlement amount. As a result, the Settlement Agreement was a compromise between Plaintiffs' calculations and Defendant's calculations, taking into account the risks of protracted litigation and the benefits to all involved in settling. Those risks include the issues involved with the Administrative exemption noted in Section

7

II(c),below. Accordingly, it is respectfully submitted that the Settlement Agreement is clearly not the product of fraud or collusion, but rather was negotiated at arm's length in good faith by the parties and counsel.

### c. *The Settlement Agreement Accounts for the Uncertainties of Protracted Litigation and Class Members Endorse the Settlement Agreement*

Continuing the litigation would have been complicated, protracted, and expensive. The risk of Plaintiffs being unable to establish liability and damages was also present because of the numerous defenses Defendant intended to assert if the case was not settled. From Plaintiffs' perspective, there was a risk the Court would accept one or more of Defendant's arguments on a key point. Plaintiffs' success on any of these aspects in motions practice, let alone at trial, was not guaranteed. The Administrative exemption is rarely tried to a jury verdict because it involves both intense factual examination and the application of rather subjective criteria, including: (1) whether an employee's "primary duty" was office work "directly related to the management or general business operations of the employer or the employer's customers;" and (2) whether the "employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." As with most cases, Plaintiffs (as well as Defendant) saw the reasonableness of compromise since the resolution of the ultimate issue would be particularly unknowable. There is no certainty that continued litigation would provide a better outcome than Settlement Agreement. This factor therefore favors a finding that the Settlement is fair, reasonable, and adequate. *Youngman v. A&B Ins. & Fin., Inc.,* No. 616CV1478ORL41GJK, 2018 U.S. Dist. LEXIS 64339 (M.D. Fla. Apr. 17, 2018) (approving settlement where plaintiffs faced difficulties of proof at trial). Further, courts reviewing the issue of fairness have favored settlements that allow even partial recovery for class members

8

where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *Smith v. Ajax Magnethermic Corp.*, 2007 U.S. Dist. LEXIS 85551, at *15 (N.D. Ohio November 7, 2007) (approving class settlement where "Plaintiffs concede that their case against the [] Defendants is not a sure success"). The Settlement Agreement is adequate taking the risks of litigation into account under Rule 23(e)(2)(c)(i).

Other than the Settlement Agreement itself, there are no "agreements required to be identified under Rule 23(e)." Rule 23(e)(2)(c)(iv). As set forth above and as will be more fully explained in Plaintiffs' counsel's motion for approval of attorney's fees, the Settlement Agreement provides adequate relief to the Class Members for the additional reason that the fees proposed are reasonable under the circumstances. Rule 23(e)(2)(c)(iii). Finally, because the Court has appointed an experienced Settlement Administrator and the Settlement Administrator has clear directives, there are no concerns regarding the "effectiveness of … [the] method of distributing relief to the class." Rule 23(e)(2)(c)(ii).

In light of the foregoing, it is respectfully submitted that the Settlement Agreement is fair and adequate under Rule 23(e)(2), and the Court should finally approve the Settlement Agreement.

### d. Public Interest and CAFA Compliance.

The Settlement Agreement furthers the "overriding public interest in favor of settlement," *Schorrig v. IBM Se. Emples. Fed. Credit Union, Se. Servs. Org., Inc.*, No. 09-CV-80973, 2011 U.S. Dist. LEXIS 163668, at *7 (S.D. Fla. Nov. 22, 2011), which "has special

importance in class actions with their notable uncertainty, difficulties of proof, and length," *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1379 (S.D. Fla. 2007). It guarantees a recovery on a class-wide basis for Plaintiffs' alleged injury. Thirty-three individuals will receive a meaningful monetary award and the parties, including Defendant, will not face the risks and expenses inherent in continued litigation. In addition, the Settlement Agreement brings finality to Defendant regarding this litigation. As a result, the substantial judicial resources that would need to be used to resolve this dispute can now be redirected toward other public ends.

Under CAFA, "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)]." 28 U.S.C. § 1715(d). Defendants served the CAFA notices on February 22, 2019, and the 90 day period for those CAFA notice recipients to lodge objections to the settlement concluded on May 23, 2019, prior to the Final Approval Hearing on June 18, 2019. Declaration of Jarod G. Taylor, attached as <u>Exhibit 3</u>, at ¶ 3. This constitutes proper notice under CAFA. *See, e.g., Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 973 (E.D. Cal. 2012).

### III.   CONCLUSION

The parties have made the requisite showing that the proposed Settlement Agreement is "fair, reasonable, and adequate" under Rule 23(e)(2). The proposed settlement is fair, reasonable, and adequate because "the proposal was negotiated at arm's length," "the class representatives and class counsel have adequately represented the class," "the costs, risks, and delay of trial and appeal" are substantial, the "relief provided for the class is adequate," and

the proposal "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). Certainly, this "was not a 'file and settle' … type case," as is demonstrated by the fact that it has been litigated over the course of two years. *David v. Am. Suzuki Motor Corp.,* No. 08-CV-22278, 2010 U.S. Dist. LEXIS 146073, at *18 n.10 (S.D. Fla. Apr. 15, 2010). Rather, the proposed Settlement Agreement is "the product of good faith, arm's-length negotiations between Class Counsel and counsel for the Defendant" after a significant amount of discovery by both sides; "there is no indicia of fraud or collusion among the parties;" "this highly complex case was adequately developed before settlement such that Class Counsel had an adequate appreciation of the merits before negotiating;" and "Class Counsel incurred considerable risk and expense in taking on this matter with no guarantee of success — expense and risk that would have been greatly compounded had this matter proceeded to trial." *Id.* at *18 (approving Rule 23 settlement); *see also Perez v. Asurion Corp.,* 501 F. Supp. 2d 1360, 1380 ("Where a substantial question exists regarding the likelihood of success at trial, this factor weighs in favor of approving a proposed class action settlement.").

In light of the foregoing, the Court should grant final approval to the parties' Settlement Agreement.

*[REMAINDER OF PAGE INTENIONAL LEFT BLANK]*

DATED this 30th day of May, 2019.

Respectfully submitted,

| | |
|---|---|
| */s/Mary E. Lytle* | */s/Tasos C. Paindiris* |
| Mary E. Lytle (Fla. Bar No. 0007950) | Tasos C. Paindiris (Fla. Bar No. 0041806) |
| David Barszcz (Fla. Bar No. 0750581) | Jesse I. Unruh (Fla. Bar No. 0093121) |
| LYTLE & BARSZCZ | JACKSON LEWIS P.C. |
| 543 N. Wymore Road, Ste. 103 | 390 North Orange Avenue, Ste. 1285 |
| Maitland, FL  32751 | Orlando, FL  32801 |
| Tel: (407) 622-6544 | Tel: (407) 246-8440 |
| Fax: (407) 622-6545 | Fax: (407) 246-8441 |
| mlytle@lblaw.attorney | tasos.paindiris@jacksonlewis.com |
| dbarszcz@lblaw.attorney | |
| | |
| Attorneys for Plaintiffs | */s/ Thomas Rohback* |
| | Thomas Rohback *(pro hac vice)* |
| | AXINN, VELTROP & HARKRIDER, LLP |
| | 90 State House Square |
| | Hartford, CT  06103 |
| | Tel: (860) 275-8100 |
| | Fax: (860) 275-8101 |
| | trohback@axinn.com |
| | |
| | Attorneys for Defendant |

4819-9502-1208, v. 1